**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| AUSTIN G. SMITH, | : | CIVIL ACTION NO. |
| Petitioner, | : | 1:14-CV-03515-TWT-JSA |
| | : | |
| v. | : | |
| | : | |
| WARDEN, Gwinnett Cnty. Det. Ctr., | : | HABEAS CORPUS |
| Respondent. | : | 28 U.S.C. § 2254 |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Petitioner executed and filed a 28 U.S.C. § 2254 habeas corpus petition on October 23, 2014, challenging his February 2013 convictions in the Superior Court of Gwinnett County after the entry of his guilty plea to reckless driving and to a violation of the Georgia Controlled Substances Act ("GCSA"). (Doc. 1). For the reasons set forth below, **IT IS RECOMMENDED** that the petition be **GRANTED**.

I.   **Procedural History**

On July 2, 2012, Petitioner was charged in Gwinnett County, Georgia, with one count of possession of a controlled substance; two counts of driving under the influence of alcohol ("DUI"); and one count of exceeding the speed limit. (Doc. 9-2 at 2). On February 8, 2013, he entered a negotiated plea of guilty to the possession count and to a reduced charge of reckless driving on one of the DUI counts. The remaining two counts were nolle prossed. (*Id.*). He "received a sentence of 4 years,

to serve the first 120 days under house arrest with the remainder on probation on Count One," and to serve "12 months of probation on Count Two, to run concurrent to Count One." (*Id.*).

### A.   State Habeas Petition

Petitioner did not file a direct appeal (*see* Doc. 1 at 2), but instead filed a state habeas petition on October 8, 2013 (Doc. 9-1 at 1-5), for which a hearing was held on December 13, 2013 (Doc. 9-4). (*See* Doc. 9-2 at 1-2). Petitioner raised the following claims in his state habeas petition:

1. His due process rights were violated because his "officially filed sentence was never presented to [him] for review or for [his] binding signature under 'Acknowledgment' contained on page 4," and the "controlling official sentence does not match the transcribed record verbatim and is therefore invalid."

2. His guilty plea was induced under the false pretense that his driver's license would not be suspended for the reckless driving offense, whereas the combination of the two offenses to which he pled guilty caused his license to be suspended, and neither his own counsel nor the prosecutor "corrected the error upon mention as conveyed within the transcripts on page 11 and page 12."

3. His counsel refused to request a continuance for the plea hearing to allow him to present additional evidence that became available in police reports dated February 11 and March 22, 2013 "to substantiate [his] alibi" for the drug offense.

(Doc. 9-1 at 4). The state habeas court made the following findings:

1. "Petitioner's sentence accurately reflects the Plea Transcript."

2

2.      "The Plea Transcript does not reflect that [] Petitioner was assured that he would not have his license suspended if he entered a guilty plea."

3.      "Petitioner has made no showing that his counsel's advice or performance fell below the range of competence demanded of attorneys in criminal cases."

(Doc. 9-2 at 3, 5).

The court concluded that "Petitioner has produced no evidence that his guilty plea was induced under false pretense or that he was promised that his license would not be suspended if he entered a guilty plea." (*Id.* at 4; *see id.* at 7 ("Petitioner failed to present any evidence . . . to refute his guilty plea, and the transcript from the February 8, 2013 plea hearing establishes that [his] plea was freely, knowingly, and voluntarily entered")).  The court also rejected four claims Petitioner submitted after the hearing, alleging (1) the violation of a probation warrant issued under the void sentence in the case at issue; (2) he was being held without bail in another case; (3) his due process rights had been violated by the cancellation of a bail hearing in that case; and (4) his access to the courts had been restricted by the freezing of his inmate account.  (*Id.* at 6).  The court denied Petitioner's state habeas petition (*id.* at 7), and the Supreme Court of Georgia summarily denied Petitioner's application for a certificate of probable cause ("CPC") to appeal that denial (Doc. 9-3).

**B.      Federal Habeas Petition and Motions for Default Judgment**

3

In his federal habeas petition, Petitioner raises the following grounds for relief:

1.   His due process rights were violated in the following ways:

   (a)   "The Sentence order was passed outside [his] presence."

   (b)   His "Negotiated Plea [was] rejected and modified" in violation of Georgia Uniform Rule of Superior Court 33.10.[1]

   (c)   "Oral pronouncement of sentence does not match the Sentence Order."

   (d)   "Judge/Court failed to perform statutory duties under O.C.G.A. § 40-5-54(b)[2] & O.C.G.A. § 40-5-75(b)[3]."

---

[1]"Rule 33.10 requires the trial court to tell a defendant that it intends to reject a negotiated plea and to inform the defendant that [he] thus has the right to withdraw [his] plea." *James v. State*, 756 S.E.2d 312, 313 (Ga. Ct. App. 2014) (internal quotations omitted).

[2]O.C.G.A. § 40-5-54 (Mandatory suspension of license; notice of suspension) provides:

(a) The [Department of Driver Services] shall forthwith suspend . . . the license of any driver upon receiving a record of such driver's conviction of . . . (2) Any felony in the commission of which a motor vehicle is used; . . . .

(b) All judges of all courts having jurisdiction of the offenses . . . in subsection (a) of this Code section shall, at the time of sentencing, give notice to the defendant . . . of the suspension of [his] driver's license. . . . [and] shall forward the notice of suspension and the defendant's driver's license to the department . . . .

[3]O.C.G.A. § 40-5-75 (Suspension of licenses by operation of law) provides:

(a) Except as provided in Code Section 40-5-76 [not applicable here], the driver's license of any person convicted of any violation of . . . the "Georgia Controlled Substances Act," including, but not limited to, possession [of] . . . a controlled substance[,] . . . shall by operation of law be suspended, and such suspension shall be subject to the following terms and conditions:

(1) Upon the first conviction of any such offense . . . the period of suspension shall be for not less than 180 days.

4

(e)   "Petitioner had constitutional[ly] ineffective counsel which rose to [a] due process violation."

(f)   "Prosecutor admitted petitioner was 'confused' at the plea hearing, rendering plea unknowing and unintelligent."

2.   His guilty plea was "induced by false pretense," i.e., his counsel's mistaken advice regarding the effect of his plea on the suspension of his driver's license, in that counsel advised Petitioner that he would not lose his license if he pled guilty "because reckless driving does not take your driver's license."

3.   Ineffective assistance of counsel for failing to do the following:

(a)   request a continuance;

(b)   present a "known defense" to the trial court; and

(c)   advise him properly about a "collateral consequence of pleading guilty," to wit, the suspension of his driver's license, despite his direct inquiry on the subject.

4.   The trial court's failure to abide by Georgia's Uniform Rule of Superior Court 33.10 and O.C.G.A. §§ 40-5-54(b), 40-5-75(b) violated his equal protection rights.

5.   There were due process violations during his state habeas proceedings.

(Doc. 1 at 10-12 (Attachment A)).

Petitioner also has filed a Motion for Default Judgment (Doc. 8) and a

---

(b) Except as provided in Code Section 40-5-76, whenever a person is convicted of possession [of] . . . a controlled substance . . . the court in which such conviction is had shall require the surrender to it of any driver's license then held by the person so convicted, and the court shall thereupon forward such license and a copy of its order to the [Department of Driver Services] within ten days after the conviction.

AO 72A
(Rev.8/8
2)

Supplemental Motion for Default Judgment (Doc. 12).  In his first motion for default, Petitioner notes that although he was not informed that his license was suspended, he was arrested for driving with a suspended license on April 3, 2013, within two months of the entry of his negotiated plea, and he was convicted of that charge on December 10, 2013.  (Doc. 8 at 14).  He asserts that he was deprived of his property interest in his driver's license without notice, a violation of his procedural due process rights.  (*Id.* at 17-20).  He also re-asserts due process violations based on (1) his not being sentenced in person, as evidenced by the date on the sentencing order, three days after his plea hearing, and the absence of his signature in the Acknowledgment section of the order, and (2) his sentence being altered from "the negotiated plea as presented by the State of four years of probation, 120 days home confinement to four years of probation, 6 months home confinement" without his receiving notice and an opportunity to withdraw his plea as required by Rule 33.10.  (*Id.* at 16-17 (citation omitted)).  Petitioner repeats these and other, related arguments in his second motion for default judgment.  (*See generally* Doc. 12).

## II.    **Grounds Four and Five Are Not Amenable to Federal Habeas Review**

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his

AO 72A
(Rev.8/8
2)

rights under federal law.[4]  *See* 28 U.S.C. § 2254(a).  This power to grant habeas corpus relief is limited, however, as explained in greater detail below.  The Court has reviewed the parties' filings, including the exhibits, and finds that the record contains sufficient facts upon which the issues may properly be resolved.

Two of Petitioner's grounds for relief, four and five, are not cognizable in this federal habeas proceeding.

## A.    Ground Four: Equal Protection

In Ground Four, Petitioner raises an equal protection claim based on the trial court's alleged violation of a Georgia Superior Court rule and two Georgia statutes. (Doc. 1 at 11).  This claim is not amenable to federal habeas review.  *See, e.g., Holsey v. Thompson*, 462 Fed. Appx. 915, 917 (11th Cir. 2012) (affirming dismissal of federal habeas petitioner's claims in which he "raised issues of pure state law[, which] were not cognizable under federal habeas review" because the principle "[t]hat '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved[,]' is well established"

---

[4]Although Petitioner has been released from confinement, he was detained when he filed his federal habeas petition and, moreover, it is well-settled that a petitioner serving a probationary sentence is "in custody" for purposes of federal habeas review.  *See Price v. Sec'y, Fla. Dep't of Corr.*, 548 Fed. Appx. 573, 575 (11th Cir. 2013) ("In the context of habeas proceedings, the 'in custody' requirement may also be met where a petitioner is on probation, parole or bail." (quotations omitted) (quoting *Duvallon v. Florida*, 691 F.2d 483, 484 (11th Cir. 1982))).

7

(quoting *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992))); *see also Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding "that a habeas petition grounded on issues of state law provides no basis for habeas relief[,]" and noting that "[a]lthough petitioner alleges violations of federal law, it is clear that [his] petition is based exclusively on state law issues which are merely couched in terms of equal protection and due process" (internal quotations omitted)).

### B.   Ground Five: Due Process in State Habeas Proceedings

In Ground Five, Petitioner challenges alleged due process errors during his state habeas proceedings.  (Doc. 1 at 11-12).  This claim also is not amenable to federal habeas review.  *See, e.g., Holsey*, 462 Fed. Appx. at 917 (affirming dismissal of federal habeas petitioner's claim "in which [he] challenged the state habeas court's failure to address his sufficiency of the evidence claim," and noting that the Eleventh Circuit has "established that a challenge to a state collateral proceeding . . . does not undermine the legality of the conviction itself and, thus, alleged defects in such proceedings do not provide a basis for habeas relief" (citing *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009))).

### III.   <u>Grounds One–Three:  Unknowing and Involuntary Plea</u>

Petitioner's first three grounds for relief allege generally that his plea was

8

unknowing and involuntary because he was not informed that he would lose his driver's license if he pled guilty, which failure he attributes largely to his counsel's ineffectiveness, and that the sentence he received was not the same sentence to which he agreed during his plea negotiations and plea hearing.  He also alleges that his counsel was ineffective for failing to seek a delay in the plea hearing, which prevented him from developing a "known defense" to the drug charge.  (Doc. 1 at 10-11).

### A.    The Law of Procedural Default

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court, i.e., a claim "*not* resolved on the merits in the state proceeding" based on "an independent and adequate state procedural ground." *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977) (noting that it was consistent with the United States Constitution for state procedural rule to require that alleged error "be challenged at trial or not at all").

> [P]rocedural default can arise in two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, *Sykes* requires the federal court to respect the state court's decision. Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

9

*Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (citations omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (noting that if (a) petitioner failed to exhaust state remedies and (b) state courts would now find his claims procedurally barred, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims"); *Owen v. Sec'y for the Dep't of Corr.*, 568 F.3d 894, 907-08 (11th Cir. 2009) (same). If a petitioner has procedurally defaulted a claim in state court and "makes no attempt to demonstrate cause or prejudice" or a fundamental miscarriage of justice, that "claim is not cognizable in a federal" habeas action. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

The procedural bar to federal habeas review may be lifted if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law, or (2) a fundamental miscarriage of justice, i.e., that he will remain incarcerated despite his actual innocence unless the federal court considers his defaulted claim. *See Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986). To establish cause for a procedural default, a petitioner must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense

10

impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim. *Henderson v. Haley*, 353 F.3d 880, 892 (11th Cir. 2003).

In order to establish a fundamental miscarriage of justice, i.e., "that constitutional error has resulted in the conviction of one who is actually innocent of the crime," a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and he "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," *id.* at 327.

**B.   Petitioner's Procedurally Defaulted Ground One Due Process Claims**

In his state habeas petition, Petitioner claimed only that his due process rights were violated because his "officially filed sentence was never presented to [him] for review or for [his] binding signature under 'Acknowledgment' contained on page 4," and the "controlling official sentence does not match the transcribed record verbatim and is therefore invalid." (Doc. 9-1 at 4). These claims correspond to ground 1(a) and

11

1(c) of Petitioner's federal habeas petition. His remaining due process claims, set forth as grounds 1(b) and 1(d)-1(f) in his federal petition (*see* Doc. 1 at 10), are unexhausted and therefore procedurally defaulted. *See Coleman*, 501 U.S. at 735 n.1. And because Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse his default, these remaining four due process claims are barred from federal habeas review. *See Netherland*, 518 U.S. at 162.

### C.   Petitioner's Non-Defaulted Ground One Due Process Claims

Petitioner has not procedurally defaulted his ground 1(a) and 1(c) due process claims alleging that (1) he was not sentenced in person and (2) his official sentence was altered from the sentence announced at his plea hearing. (*See* Doc. 10 at 1; Doc. 9-1 at 4). The state habeas court denied these claims on the merits. (Doc. 9-2 at 2-3).

#### 1.   Federal Habeas Review on the Merits

Petitioner may obtain federal habeas relief for claims that a state court denied on the merits only if the court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's determination of a factual issue is

AO 72A
(Rev.8/8
2)

presumed correct unless the petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court explained that, in applying 28 U.S.C. § 2254(d), a federal habeas court first ascertains the "clearly established Federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." The federal habeas court then considers whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially indistinguishable from" those in a Supreme Court decision "and nevertheless arrives at a result different from" that decision. *Id.* at 405-06.

If this Court determines that the state court decision at issue is not contrary to clearly established federal law, it then considers whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101

13

(2011) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly [but r]ather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. Thus, "[a]s a condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was *an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *Richter*, 562 U.S. at 103 (emphasis added); *see Hittson v. GDCP Warden*, 759 F.3d 1210, 1231 (11th Cir. 2014) (noting that "the highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision [for a federal habeas court to] review under AEDPA" (internal quotations omitted), which for a Georgia petitioner's state habeas claim is the decision of the Supreme Court of Georgia, even if that court "summarily denied" the petitioner's CPC application without offering any rationale for its ruling), *cert. denied*, *Hittson v. Chatman*, 2015 U.S. LEXIS 3917 (U.S. June 15, 2015).

[T]here is no AEDPA requirement that a state court explain its reasons

14

> for rejecting a claim; "Section 2254(d) applies even where there has been a summary denial." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. [A federal court's] task in these situations is to review the record before the Georgia Supreme Court to "determine what arguments or theories supported or, as here, could have supported, the state court's decision." *Id.* at 102. [The petitioner] may only obtain federal habeas relief "by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

*Id.* at 1232-33 (footnote omitted; citations altered); *see id.* at 1232 n.25 (noting that *Richter* changed the approach condoned in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), "to 'look through' summary decisions by state appellate courts—reviewing, under § 2254(d), 'the last reasoned decision' by a state court"; and therefore "declin[ing] to look through a summary decision by a state appellate court and instead review[ing] the record to see whether the outcome of the state court proceedings permits a grant of habeas relief" (internal quotations omitted), while noting that some Eleventh Circuit panels, although incorrectly in light of controlling Supreme Court and Eleventh Circuit precedent, "have continued to apply *Ylst* to ascribe the reasoning of a lower court to the decisions of later state courts").

## 2.   Federal Habeas Review of a State Court Guilty Plea

15

"Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981). But "for a guilty plea to be valid and enforceable, 'the record must show, or there must be an allegation and evidence which shows, that an accused . . . intelligently and understandingly' waived the rights implicated by a guilty plea." *Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). "To be valid, a guilty plea must be made voluntarily and *with full knowledge of the consequences*. Because a plea of guilty 'is a conviction,' anything less than an 'affirmative showing' that it was made intelligently and voluntarily amounts to plain error." *Pardue v. Burton*, 26 F.3d 1093, 1096 (11th Cir. 1994) (citing & quoting *Boykin*, 395 U.S. at 241-42) (citation omitted; emphasis added); *see also Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) ("Ignorance of the consequences of a guilty plea may require its rejection." (citing *Boykin*, 395 U.S. at 243-44)).

But "[s]olemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings").  And "[t]he procedure prescribed by [Fed. R. Crim. P.] 11 is not the constitutional minimum required for a knowing and voluntary plea; it merely constitutes the procedure for federal courts. Thus, Rule 11 is not binding on the states; a wide range of constitutional plea procedures [are] available to the state courts."  *Gaddy v. Linahan*, 780 F.2d 935, 943 n.8 (11th Cir. 1986) (citation and internal quotations omitted); *see, e.g., Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir. 1983) ("Although federal law requires the judge personally to tell the defendant of the mandatory minimum sentence, Fed. R. Crim. P. 11(c)(1), Florida law does not.").

### 3.   Petitioner's Ground 1(a) Claim

Petitioner's first non-defaulted due process claim—that he was not sentenced in person—fails because he was present when his sentence was announced at the end of his plea hearing (*see* Doc. 9-1 at 21), although the sentencing order itself was prepared three days later (*see id.* at 26-29).  Petitioner's presence when his sentence was announced is all that due process requires.  *See, e.g., United States v. Joseph*, 569

17

Fed. Appx. 861, 863 (11th Cir. 2014) ("Although . . . the due process clause . . . give[s] the defendant the right to be present at sentencing, that right does not extend to every instance of judicial action modifying a sentence." (citing *United States v. Tamayo*, 80 F.3d 1514, 1522 (11th Cir. 1996) ("concluding the district court did not plainly err in not giving the defendant an opportunity to allocute because the defendant's entire sentencing package was not vacated on direct appeal and remand was limited to consideration of a single sentencing issue")).  Indeed, the written sentence reduced Petitioner's term of home confinement from six to four months, which, as discussed below, was the term to which Petitioner had agreed in the negotiated plea.  (*Compare* Doc. 9-1 at 21 *with id.* at 28; *see id.* at 9).  Petitioner has not shown that he had a federal due process right to review his officially filed sentence before it was entered on the record, especially when that sentence was more favorable to him than the sentence announced at his plea hearing, to which he had agreed.  Petitioner's ground 1(a) claim fails.

### 4.     Petitioner's Ground 1(c) Claim

As to Petitioner's other non-defaulted due process claim—that his official sentence was altered from the sentence announced at his plea hearing—a review of the record reveals that his official sentence matches the sentence discussed at his plea

18

hearing, although there was some confusion about the duration of his home confinement, as noted above, and there was an additional special condition of probation that was not mentioned in the negotiated plea, to wit, the use of a SCRAM (Secure Continuous Remote Alcohol Monitor) device for six months, a condition to which Petitioner agreed at the plea hearing. (*See id.* at 17-20).

At the hearing, the prosecutor stated: "In this negotiated plea, the state has recommended a sentence of five years to serve the first 120 days on house arrest[5] and the remainder on probation with other special conditions. Do you understand that the court is not required to follow this recommendation but can sentence you to the maximum permitted by law?" (*Id.* at 12). Petitioner responded that he understood and that he also understood that if the court did not follow the negotiated plea recommendation, he would have the right to withdraw his plea. (*Id.*).

Later, the court suggested—and Petitioner's counsel, after consulting with Petitioner, agreed to—the use of a SCRAM device for six months. (*Id.* at 19-20*; see id.* at 17, 19 (after the court suggested the use of "a mechanism placed on [Petitioner's] vehicle so that he can't drive if he's intoxicated," the prosecutor noted that "there are

---

[5]This appears to be a misstatement by the prosecutor, for shortly before that she had stated that the negotiated plea called for a sentence of "[f]our years to serve [on probation with] 120 days in home confinement." (Doc. 9-1 at 9).

19

house arrest GPS [devices] that also monitor alcohol consumption," and Petitioner agreed to the use of such a device for six months)).  There is nothing in the record of the plea hearing to suggest that Petitioner disagreed with or objected to this modification of his negotiated plea.  (*See id.* at 17-21).  At a minimum, he was not unaware of this additional consequence of his plea.  At the end of the plea hearing, the court announced that Petitioner's sentence was four years, "to serve the first six months in home confinement.  The remainder will be served on probation."  The court did not mention the SCRAM device.  (*Id.* at 21).  Petitioner did not object.  (*Id.*).

Petitioner received a suspended sentence on both counts of conviction, to be served on probation—four years on the drug offense and one year concurrently on the reckless driving offense.  As a special condition of probation, he was "remanded to the custody and supervision of a house arrest program as directed by the probation department for a period of FOUR MONTHS with the SCRAM device remaining in place for a period of SIX MONTHS."  (*Id.* at 28; *see id.* at 26-29).  In other words, the combined sentence that Petitioner received was the same as the one outlined in his negotiated plea, with the exception of the SCRAM device requirement to which Petitioner had agreed during the plea colloquy.

Thus, to the extent that Petitioner's non-defaulted due process claims properly

20

allege federal constitutional violations, these claims fail because Petitioner has not shown that the state courts' denial of relief on these claims was "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Richter*, 562 U.S. at 103.

> **D.** **Grounds Two and Three: Unknowing and Involuntary Plea; Ineffective Assistance of Counsel**

Petitioner alleges in grounds two and three of his federal habeas petition that his plea was unknowing and involuntary because it was based on the false premise that his driver's license would not be suspended if he pled guilty, which defect he attributes largely to his counsel's ineffective assistance in failing to advise him properly regarding the consequences of his plea. He also alleges that counsel failed to seek a delay in his plea hearing and to develop a "known defense" to the drug charge. (Doc. 1 at 10-11). In his state habeas petition, Petitioner alleged that his plea was induced under the false pretense that his driver's license would not be suspended if he pled guilty, attributable to the failure of both his trial counsel and the prosecutor, and that his counsel failed to seek a delay in the plea hearing to allow him to present evidence that became available in police reports on February 11 and March 22, 2013 "to substantiate [his] alibi" for the drug offense. (Doc. 9-1 at 4).

21

### 1.    Federal Habeas Review of Claims of Ineffective Assistance of Counsel

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Id.* at 697. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.* First, a federal habeas court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). Second, a federal habeas court

22

determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"Surmounting *Strickland*'s high bar is never an easy task. . . . Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. . . . The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (citations and internal quotations omitted).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations and internal quotations omitted).

## 2.    Procedural Background

At Petitioner's plea hearing, the prosecutor recited the facts underlying the

23

charges against Petitioner as follows.  He was stopped while speeding at about 1:00 a.m. on November 24, 2011, and arrested for DUI.  His blood alcohol content was measured at .092.  "While [he was] being booked into the jail, . . . the deputy found on [Petitioner's] person a pill, Alprazolam, which is a schedule IV substance . . . ."  (Doc. 9-1 at 9).

After listening to this recitation of the facts, Petitioner acknowledged the following: (1) he fully understood the charges against him and he understood the rights he was waiving by pleading guilty rather than proceeding to trial (*id.* at 10-11); (2) "the state has recommended a sentence of [four] years to serve the first 120 days on house arrest and the remainder on probation with other special conditions," but the court need not accept that recommendation and could sentence Petitioner to a maximum of 11 years' imprisonment, although Petitioner could withdraw his plea in that circumstance (*id.* at 11-12); (4) he understood both the general and the special terms of his probation (*id.* at 12-14); (5) he had not been forced or threatened or promised anything to cause him to plead guilty, and he was satisfied with his counsel's performance (*id.* at 14); and (6) he had committed the charged offenses as described earlier and was pleading guilty "freely and voluntarily" (*id.* at 14-15).

Petitioner's counsel noted that Petitioner "uses his car in his business.  He really

24

can't afford the DUI. . . . He's acutely aware of the fact that any other alcohol-related offenses will render him without a license, and he basically will – his whole financial situation will tumble." (*Id.* at 16-17).  Upon the court's inquiry, Petitioner agreed to "to have a mechanism placed on his vehicle so that he can't drive if he's intoxicated." (*Id.* at 17).  The court and Petitioner's counsel, after consulting with Petitioner, agreed instead to the use of a SCRAM device for six months, which is not installed on a vehicle but rather on the affected party, usually on his ankle.  (*Id.* at 18-20).

At Petitioner's habeas hearing, he stated that the plea hearing colloquy was "extremely misleading," "otherwise, why would [the court] suggest putting a Breathalyzer on [his] car if [his] license was going to be suspended?"  (Doc. 9-4 at 9). His trial counsel testified that he did not remember ever discussing the effect of Petitioner's drug conviction on whether he would be able to keep his driver's license because he and Petitioner were focused on pleading down the DUI charge, which carries a mandatory suspension, whereas reckless driving does not.  (*Id.* at 20).  When Petitioner asked his trial counsel if he "knew [Petitioner's] license would be suspended due to the" drug conviction, counsel responded:

> I don't remember ever addressing that in my mind, to be totally frank with you. I don't remember us talking about it, you know. And I may have simply overlooked it. But I don't -- I didn't ever make any false

AO 72A
(Rev.8/8
2)

> statements to you. If you -- if you -- you know, we were talking about the DUI, and I may have fogged out about the fact that there was a possibility of having it lost on the drug charge, but that was never -- that was never our discussions. I can't say I told you -- I mean, that it wouldn't be because I don't think -- I know better. I wouldn't have said that, so therefore --

(*Id.* at 25).  The habeas court, the same court that accepted Petitioner's plea, interjected that the reason for the discussion at the plea hearing about the installation of a device on Petitioner's vehicle to prevent him from driving under the influence of alcohol was the court's "concern [that] once you became a licensed driver and had the ability to drive again, I wanted a period of time that the public would be protected from you." (*Id.* at 27).  Petitioner insisted that he would not have pled guilty but would have gone to trial and risked convictions on both counts had he known that his license would be suspended as a result of his plea.  (*Id.* at 27-31).

### 3.    The Parties' Supplemental Briefing

In supplemental briefing ordered by this Court, Respondent states that Petitioner's sentence of 120 days' house arrest required "that he remain in his residence for the entirety of the 120 days and be subject to electronic monitoring with a SCRAM GPS monitoring device." (Doc. 14 at 1).  "Petitioner's plea was entered on February 8, 2013; he was cited for Driving with a Suspended License on April 3, 2013,

26

and he was taken into custody for a probation violation and a new charge on April 5, 2013. Both Petitioner's citation and his arrest occurred within 120 days of his plea." (*Id.* at 1-2 (citation omitted)). Petitioner was not released from custody thereafter until December 24, 2014. (*Id.* at 2; *see id.* at 11).

Petitioner asserts, on the other hand, that neither the "exact language in the Sentence Order" nor his probation officer, during their initial meeting, put him on notice that his license had been suspended or that he was not allowed to drive during the period of his house arrest. (Doc. 16 at 2-3). He states that when he left the courtroom after entering his plea, he "was given a date to report to the probation department for orientation. [He] was told the terms of the house arrest would be reviewed at that time and to bring a schedule. . . for approved functions, such as: work, classes (school or treatment) and parenting/extra-curricular activities." (Doc. 17 at 1). He contends that he "was not required to remain in his home 24 hours a day." (*Id.* at 1-2; *see* Doc. 17-1 (Pet'r Aff.) ¶¶ 4-7).

Respondent acknowledges that Petitioner's driver's license was suspended for 180 days "by operation of law as required in O.C.G.A. § 40-5-75," but although the suspension "was not addressed in the terms of his sentence," it "was immaterial to his personal situation" because during the entire 6-month suspension "Petitioner was either

27

restricted from leaving his house because of his home confinement sentence, which he apparently ignored, or was incarcerated in the Gwinnett County Detention Center because of a new charge and a probation revocation." (Doc. 14 at 3). Petitioner notes that due to his April 2013 arrest for driving with a suspended license, which he did not know was suspended at the time of his arrest, his license was suspended for an additional six months, or for one year in total. (Doc. 16 at 3-4).

Respondent contends that under Georgia law, the trial court was not required to inform Petitioner of the suspension of his driver's license or to collect his license at sentencing. (Doc. 14 at 3-4 (citing O.C.G.A. §§ 40-5-54, 40-5-60)). Respondent states that "[n]otice of the suspension as a matter of law resulting from a [GCSA] conviction . . . is governed by O.C.G.A. § 40-5-60. This notice is provided by the Department of Driver[] Services rather than by the courts." (*Id.* at 5). Respondent argues that "even if Georgia law required the trial court to inform a criminal defendant of a mandatory driver's license suspension resulting from [his] plea, a failure to inform [him] of the suspension would not require that the plea be set aside." (*Id.* (citing *Smith v. State*, 697 S.E.2d 177, 181-82 (Ga. 2010) (discussing distinction between direct and collateral consequences of conviction))).

Petitioner states, to the contrary, that O.C.G.A. § 40-5-75(b) does require a trial

28

court to collect the driver's license of a defendant who is convicted of a GCSA offense.

(Doc. 16 at 4). He argues that O.C.G.A. § 40-5-54(b) also required the trial court to

take possession of his driver's license. (*Id.* at 4-8).

> Under the current facts the notice requirement is placed by statute upon
> the trial court. The argument by the state ignores the clear language of the
> code sections, namely O.C.G.A. § 40-5-75(b) and § 40-5-54(b). [And] . . .
> the Gwinnett County Probation Department did not allege [that]
> Petitioner was required to remain within his home 24 hours a day.
> Following the imposition of the sentence being challenged and the
> subsequent arrest for driving on a suspended license, the probation officer
> did not allege that Petitioner violated the terms of his sentence by
> unauthorized absence from his residence. [He] alleged th[at] Petitioner
> violated his probation by being arrested for driving on a suspended
> license and being arrested for possession of Marijuana (This new charge
> being dismissed on March 4, 2015 in the "interest of justice").

(Doc. 17 at 3 (citation omitted); *see id.* at 6-7 (nolle prosequi of marijuana charge)).

Respondent's final argument is that Petitioner's rights under *Padilla v.*

*Kentucky*, 559 U.S. 356 (2010), were not violated during his guilty plea proceedings

because (1) the suspension of his driver's license was a collateral, not a direct,

consequence of the plea, and (2) even if Petitioner's counsel performed deficiently by

not advising him of this consequence, Petitioner was not prejudiced by counsel's

performance because his "home confinement sentence and subsequent incarceration

encompassed the entirety of his mandatory suspension." (Doc. 14 at 6-8).

29

Petitioner argues, on the other hand, that he was prejudiced by his counsel's deficient performance. (Doc. 16 at 13-14). "In the facts of this case, it is very simple. The petitioner's plea was predicated on the keeping of his license. Counsel knew [Petitioner] needed a driver's license to maintain employment and be a responsible parent." (*Id.* at 13). Petitioner argues that he was further prejudiced by counsel's misadvice because it led to his arrest and conviction for driving with a suspended license, the "revocation of [his] probation for being arrested and convicted of the new charge, the added term of suspension to [his] driver's license (6 more months) and an additional $210.00 fee to reinstate [his] license." (*Id.* at 13-14).

> Petitioner specifically questioned his attorney about the consequences of a plea to the charges contained in the accusation. He was affirmatively advised by the terms of the negotiated plea his license would be safe and protected. Here there was a specific inquiry and a response by the attorney wherein he gave erroneous advice. . . . The law makes it mandatory [for] the Court tell a Defendant of the suspension and also that the Court take the license and forward it to the Department of Driver Services. The statutes interlock and therefore make it even clearer that the suspension is not a collateral consequence. The suspension occurs at the time of sentencing and is a part of the sentencing process – not some future or collateral consequence.

(Doc. 17 at 4-5; *see* Pet'r Aff. ¶ 3).

### 4.      Relevant Caselaw

As noted above, it is well-settled that for a guilty plea to be knowing and

30

voluntary, the defendant must be informed of all of the direct consequences of his plea. In *Brady v. United States*, the Supreme Court explained the "standard as to the voluntariness of guilty pleas":

> [a] plea of guilty entered by one *fully aware of the direct consequences*, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

397 U.S. 742, 755 (1970) (quotations omitted) (emphasis added). "To be valid, a guilty plea must be made voluntarily and with full knowledge of the consequences. Because a plea of guilty 'is a conviction,' anything less than an 'affirmative showing' that it was made intelligently and voluntarily amounts to plain error." *Pardue*, 26 F.3d at 1096 (citing & quoting *Boykin*, 395 U.S. at 241-42) (citation omitted); *see United States v. Kabore*, No. 1:13-CR-217-ODE, 2014 U.S. Dist. LEXIS 84052, at *25-26 (N.D. Ga. June 19, 2014) ("A guilty plea must be both knowing and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). In order to enter a guilty plea voluntarily, one must be 'fully aware of the *direct consequences*' . . . [of the plea].

31

*Brady v. United States*, 397 U.S. 742, 755 (1970) (emphasis added).").[6]

The Sixth Circuit has concluded, in what appear to be circumstances similar to those in the case at hand, that a trial court's failure to inform a federal habeas petitioner of the suspension of his driver's license rendered his guilty plea in state court unknowing.

> As a judge-imposed punishment made part of [petitioner's] sentence, the suspension of [his] driver's license constituted a direct consequence of [his] guilty plea. It was not a collateral consequence to be imposed, if at all, by an agency or party external to the court. *See El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (explaining that "[a] collateral consequence is one that 'remains beyond the control and responsibility of the . . . court in which that conviction was entered' ") (quoting *United States v. Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000)); *cf. Kratt v. Garvey*, 342 F.3d 475 (6th Cir. 2003) (holding that revocation of a defendant's pilot's license was a collateral consequence of the defendant's guilty plea to drug charges where the revocation was effected by the Federal Aviation Administration more than a year and a half after the defendant pleaded guilty before the court). Because the suspension of [petitioner's] driver's license was to be a direct consequence of his plea, effected by the trial court as required by Ohio law, the trial court was required to advise [him] that his plea would result in [the] suspension.

---

[6]The holding in *Padilla* is not strictly relevant to the analysis here.  At issue in *Padilla* was whether defense counsel provided ineffective assistance by failing to advise the defendant about the immigration consequences of a guilty plea.  But deportation is "unique" and therefore cannot be neatly characterized as either a direct or a collateral consequence of a conviction.  *Chaidez v. United States*, 133 S. Ct. 1103, 1110 (2013).  The *Padilla* Court "thus resolved the threshold question before [it] by breaching the previously chink-free wall between direct and collateral consequences."  *Id.*  The *Padilla* Court did not address what other sorts of consequences must be disclosed to a defendant before a guilty plea.

AO 72A
(Rev.8/8
2)

*Hall v. Gainsheimer*, 137 Fed. Appx. 866, 869 (6th Cir. 2005) (citations omitted or altered).   "The trial court having failed to advise [petitioner] of all the direct consequences of his guilty plea, [his] plea was not 'knowing.' " *Id.*

### 5.   Analysis

It is apparently undisputed that Petitioner was not aware when he entered his plea that his driver's license would be suspended by operation of law.  The issue here, then, is whether the suspension of his license was a direct or a collateral consequence of his plea.  If it was a direct consequence, his plea was not knowing and voluntary, due either to the trial court's failure to collect Petitioner's license or to trial counsel's failure to inform Petitioner that the suspension of his license was a mandatory consequence of his guilty plea.

It appears that Petitioner has the better of the argument as to whether the suspension of his driver's license was a direct consequence of his guilty plea and whether the trial court was required to collect his license at sentencing.  Under Georgia law, both appear to be the case.

> (a) [T]he driver's license of any person convicted of . . . possession [of] . . . a controlled substance . . . shall *by operation of law* be suspended . . . .

> (b) [W]henever a person is convicted of possession [of] . . . a controlled

33

> substance . . . *the court in which such conviction is had shall require the surrender to it of any driver's license then held by the person so convicted*, and the court shall thereupon forward such license and a copy of its order to the [Department of Driver Services] within ten days after the conviction.

O.C.G.A. § 40-5-75 (Suspension of licenses by operation of law) (emphasis added).

It is also undisputed that Petitioner pled guilty to a violation of the Georgia Controlled Substances Act. (*See* Doc. 9-5 at 1, 5). As noted above, Georgia law thus required the trial court to collect Petitioner's driver's license at sentencing. *See* O.C.G.A. § 40-5-75(b). Respondent's citation to O.C.G.A. § 40-5-60—to the effect that notice of suspension by operation of law "is provided by the Department of Driver[] Services rather than by the courts" (Doc. 14 at 5)—is unconvincing. Indeed, subsection (a) of § 40-5-60 provides: "Notice of suspension by operation of law shall be considered legal notice. Any license suspension or revocation mandated in this chapter following a person's conviction for any offense, including suspensions due to the accumulation of points . . . shall be by operation of law." Although § 40-5-60(b) refers to "any suspension or revocation for which the department is required to send notice to the driver," that subsection provides no guidance as to when the requirement of departmental notice takes effect, but rather merely instructs the department regarding where to send the notice.

34

It appears, therefore, that the suspension of Petitioner's driver's license was a *direct* consequence of his guilty plea to the controlled substance offense and that the failure of both the trial court and Petitioner's trial counsel to inform him of that consequence rendered his plea unknowing and involuntary.  Counsel's failure also constituted deficient performance. *See United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) ("[C]ounsel has a constitutional duty to inform his client of direct consequences of his guilty plea; but if a consequence is merely collateral to a plea of guilty—in other words, if it is an incidental or loosely related result of the plea—counsel has no duty to mention it.").

And counsel's comments during Petitioner's plea hearing, indicating the importance to Petitioner of retaining his driver's license (Doc. 9-1 at 16-17), support Petitioner's contention that had he been fully informed of all of the direct consequences of his plea, including the suspension of his driver's license by operation of law, he would not have pled guilty.  This evidence is sufficient to support the conclusion that "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, i.e., that Petitioner would not have pled guilty.  Petitioner was therefore prejudiced by counsel's

AO 72A
(Rev.8/8
2)

deficient performance.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").[7]

The undersigned concludes therefore that Petitioner's guilty plea was unknowing and involuntary, in part due to the ineffective assistance of his trial counsel.  There is no reasonable interpretation of Supreme Court caselaw to support the state courts' conclusions to the contrary.  *See Richter*, 562 U.S. at 101, 103.  For these reasons, Petitioner's habeas corpus petition is due to be granted.

---

[7]Respondent's argument that Petitioner was not prejudiced by counsel's performance misses the mark.  Respondent argues that Petitioner suffered no prejudice because he was either confined to his home or incarcerated on a probation violation and/or new criminal charge during the entire period of his mandatory driver's license suspension. (*See* Doc. 14 at 6-8).  But the prejudice that Petitioner suffered must be gauged at the moment when he entered his guilty plea without full knowledge of its direct consequences.  Petitioner contends, and the record evidence supports, that with full knowledge of those consequences, he would not have pled guilty.  The course of future events was unknown and unknowable at that moment, and therefore those events are irrelevant to the prejudice determination.  Moreover, those future events may not have transpired had Petitioner not entered his guilty plea and been convicted as he was.  For example, because his license was suspended as a direct result of his plea, he may not have been in a position to be arrested for driving with a suspended license had he not entered the plea.  In addition, there is nothing in the record delineating the precise restrictions on Petitioner during his four-month house arrest, including whether or not he was allowed to leave his home for any reason during that period. (*See* Doc. 9-1 at 28 (Petitioner's final sentencing order, indicating that he was "remanded to the custody and supervision of a house arrest program as directed by the probation department," but failing to specify the details of that house arrest program); *see also* Doc. 17 at 1-2; Doc. 17-1 (Pet'r Aff.) ¶¶ 4-7).

AO 72A
(Rev.8/8
2)

**IV.    Motions for Default Judgment, for Bail, and for a Stay of the State Court Judgment**

Default judgment is not available in a federal habeas proceeding.  *See Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) ("a default judgment is not contemplated in habeas corpus cases").  Petitioner's two motions for default judgment (Docs. 8, 12) should therefore be denied.  Petitioner's motion for bail (Doc. 15) is now moot, as Petitioner has been released from confinement.  (*See* Doc. 7; *see also* Doc. 14 at 11).  Petitioner's motion for a stay of the state court judgment he challenges herein (Doc. 15) should also be denied as moot in light of the foregoing recommendation.

**V.    Certificate Of Appealability**

A state prisoner must obtain a certificate of appealability (COA) before appealing the denial of his federal habeas petition.  28 U.S.C. § 2253(c)(1)(A).  A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).  A petitioner need not "show he will ultimately

37

succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

Should the District Court decline to adopt the undersigned's recommendation as to the merits of Petitioner's claims, the undersigned recommends in the alternative that a certificate of appealability be granted on the issues of (1) whether Petitioner's guilty plea was knowing and voluntary and (2) whether Petitioner's trial counsel provided ineffective assistance by failing to inform him that his driver's license would be suspended by operation of law upon the entry of his guilty plea.

## VI.   <u>Conclusion</u>

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **GRANT** Petitioner's petition for a writ of habeas corpus (Doc. 1); **DENY** Petitioner's Motion for Default Judgment (Doc. 8), Supplemental Motion for Default Judgment (Doc. 12) and Motion for Bail and Stay of Further Proceedings (Doc. 15); and **ORDER** the state trial court to issue the orders that are necessary to implement this recommendation.

In the alternative, **IT IS RECOMMENDED** that the Court **GRANT** Petitioner a certificate of appealability on the issues of (1) whether his guilty plea was knowing

38

and voluntary and (2) whether his trial counsel provided ineffective assistance with respect to the guilty plea by failing to inform him of the mandatory suspension of his driver's license upon the entry of his plea.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 21st day of July, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

39